UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 3:07-00093 |
| | ) **Judge Echols** |
| BETTY LOU COLE, | ) |
| NOVICE J. COLE, JR., and | ) |
| SHARON Y. WHITE | ) |

## MEMORANDUM

This is a criminal case in which the Defendants, all of whom were employees of Lu, Inc., are alleged to have assisted James Whitaker ("Whitaker") in fraudulently obtaining Social Security disability benefits while he was simultaneously receiving compensation from Lu, Inc. Specifically, Defendants are charged in a four-count Indictment as follows: Count One, conspiracy to defraud the United States in violation of 18 U.S.C. § 371; Count Two, aiding and abetting Whitaker in obtaining Social Security disability benefits while he was simultaneously receiving income from Lu, Inc.; Count Three, aiding and abetting Whitaker in falsifying or concealing from the Social Security Administration ("SSA") the fact that Whitaker had the ability to engage in substantial gainful employment; and Count Four, aiding and abetting Lu, Inc. in falsifying or concealing from the SSA the fact that Whitaker had the ability to engage in gainful activity.

Pending before the Court are Defendant Sharon White's ("White's") "Motion to Dismiss for Pre-Indictment Delay" (Docket Entry No. 94) and Defendant Novice Cole's "Motion to Dismiss for Preindictment Delay" (Docket Entry No. 111). The parties have fully briefed those motions and the

1

Court held an evidentiary hearing on the issue of pre-indictment delay.[1] In addition to the testimony and the exhibits which were received during the evidentiary hearing, counsel were allowed to submit Affidavits under seal regarding their recollection of events which led to the issuance of the Indictment in this case. With the permission of the Court, the Government has submitted Prosecution Memorandums, also under seal.

## I. FACTS

The Indictment in this case relating to the allegedly wrongful receipt of Social Security disability benefits by Whitaker arose from an unrelated investigation which began in early 2005 when the Tennessee Department of Transportation ("TDOT") received allegations from a former Lu, Inc. employee that guardrails were not being properly installed by Lu, Inc. The allegations prompted an audit by the Office of Internal Audit of TDOT. Subsequently, federal and state investigators began a criminal investigation. A more in-depth description of the background of this investigation can be found in the Court's Order and Memorandum denying Defendants' "Motion to Suppress Evidence." (Docket Entry Nos. 211 & 212).

On April 20, 2005, federal and state agents searched the premises of Lu, Inc. pursuant to a federal search warrant. During the search, agents seized numerous business records such as invoices, contracts, specifications and regulations relating to the repair and installation of guardrails, as well as documents and other materials which would show how crews were being instructed to install guardrails.

During the summer and fall of 2005, the prosecutors subpoenaed documents from the

---

[1] To accommodate counsel and witness schedules, the evidentiary hearing was held over a span of three different days, January 11, 2008, February 7, 2008, and February 29, 2008.

Defendants, in addition to the documents seized pursuant to the search warrant. In various letters, Defendants, through counsel, pledged cooperation and expressed the hope that any matters involving Lu, Inc. or its employees could be resolved promptly. For example, in a letter dated August 10, 2005, Hal Hardin ("Hardin"), counsel for Defendant Novice Cole, sent a letter to federal prosecutors in which he wrote, "[w]e are still doing all in our power to bring this investigation to a quick conclusion. We ask that the government also move quickly to a resolution whatever that may be." (Docket Entry No. 112 at 5 n.9).[2] Similarly, in a letter dated November 3, 2005, Hardin wrote Assistant United States Attorney Debra Phillips ("AUSA Phillips"), expressing surprise that any investigation against Lu, Inc. or its employees had not been completed and requesting counsel be advised about any specific allegations that were being investigated. Counsel also asked that the case "be brought to a swift conclusion," and observed that "there are witnesses that are not in good health." (Docket Entry 111, Ex. D).

In response to Hardin's assertion that "witnesses" were not in good health, Special Assistant United States Attorney Dennis J. Garvey ("SAUSA Garvey") wrote a letter in which he requested "that you let us know of any witnesses that are relevant, in your opinion, and not in good health concerning this investigation." (Docket Entry No. 111, Ex. I). Hardin responded to that letter, writing, "I will be happy to advise you of all the witnesses who have health problems, and I assume that we can have an understanding that we will be able to take those individuals' depositions and use them for any and all purposes involving the issues under investigation." (Docket Entry No. 111, Ex. J). There was no response from the Government to this letter.

---

[2] This letter is apparently not in the record and it is unclear as to whom it was addressed. The letter is, however, excerpted in Defendant Novice Cole's brief and will be accepted as an accurate representation of the letter.

3

Whitaker, the recipient of the alleged fraudulent social security disability payments, was diagnosed with lung cancer in August 2005.[3] He received treatment in the form of radiation and chemotherapy which was completed in December 2005. In addition to cancer, Whitaker had a heart condition and had previously been seriously injured in an auto accident in 1995 from which he mostly recovered. Whitaker filed an application for Social Security Disability Benefits in 1996. Initially, his application was denied, but on appeal the decision was reversed and he began receiving SSA disability benefits retroactive to December 7, 1995. Meanwhile, Whitaker had returned to work at Lu, Inc. at the end of 1996. After he began receiving Social Security disability monthly payment, he continued to work for Lu, Inc. through February 2006.

The Government apparently first learned of the possible unlawful receipt by Whitaker of Social Security disability benefits on October 12, 2005, during an interview conducted by Tennessee Bureau of Investigation Agent Joe Craig ("Agent Craig") with an ex-employee of Lu, Inc. Agent Craig was told that Whitaker, a longtime employee of Lu, Inc. who was involved in guardrail installation and maintenance, had been receiving Social Security disability payments while working for Lu, Inc.

On October 24, 2005, AUSA Phillips wrote a letter to Defendant Novice Cole advising him that he was "a target of federal and state investigation involving fraudulent business activity as it relates to road related contracts with the State of Tennessee." (Docket Entry No. 111, Ex. O) The other Defendants in this case apparently were not sent target letters, at least at this time.

On December 1, 2005, Whitaker was interviewed at his home by Agent Craig and two other investigators about the allegation he was receiving Social Security disability payments but was

---

[3] At some point, Whitaker was also diagnosed with throat cancer, but it is unclear when that diagnosis was made.

4

working for Lu, Inc. Whitaker admitted it was true. Whitaker claimed that he came up with the idea of working as a consultant for Lu, Inc. for a salary while also receiving disability benefits from the SSA. Whitaker needed the extra money and told Defendant Novice Cole that his father (Novice Cole, Sr.) had promised Whitaker before he died that he would pay Whitaker a pension when he retired. Whitaker viewed the consultant payments merely as Lu, Inc. honoring Novice Cole Sr.'s purported promise to pay him a retirement pension. Whitaker also claimed he justified his consulting salary by submitting an invoice or charge sheet from a bogus company to Lu, Inc. The false invoice was presented to Defendant Novice Cole who would then send it to Defendant White, the comptroller for Lu, Inc. for the issuance of a check to the bogus company or to Whitaker. Whitaker also stated that Defendant Betty Lou Cole was aware of the fraudulent scheme and approved the monthly payments, although he personally had little contact and few communications with her directly.

According to Agent Craig's report of the December 1, 2005 interview, the agents were fully aware that Whitaker was receiving chemotherapy and radiation treatment for cancer and that he was then taking medication. The voluntary interview was conducted with the understanding that Whitaker could stop it at any time.

On December 6, 2005, agents re-interviewed Whitaker at his home. During that interview, according to Agent Craig's report, Whitaker stated he had never discussed with Defendant White the bogus invoices or the checks issued for his services as a consultant.

According to Michael Terry ("Terry"), Whitaker's former attorney, Whitaker had been interviewed several times by AUSA Phillips and others before he was named as a "target" in the Social Security fraud case, in about April 2006, before Terry was appointed to represent him. During Terry's first few meetings with AUSA Phillips, some of the discussion was about the guardrail case, but the

5

discussions later turned to Social Security fraud, tax fraud, and the amount of money lost by the Government.

On December 12, 2005, Aaron Wyckoff ("Wyckoff"), attorney for Defendant White, received a phone call from AUSA Phillips during which Phillips allegedly stated that Defendant White faced massive criminal liability in regard to the receipt of Social Security disability benefits by Whitaker. Shortly thereafter, on December 16, 2005, Wyckoff met with AUSA Phillips, SAUSA Garvey and Special Assistant United States Attorney Albert Partee ("SAUSA Partee").[4] During the meeting, Wyckoff claims SAUSA Partee got upset, stood up, and said. "Let's just indict her." (Wyckoff Aff ¶ 7). Given this pronouncement, Wyckoff fully expected that his client would be indicted in January or February 2006. (Id. ¶ 8).

Whitaker was indicted on August 30, 2006. The seven-count Indictment charged Whitaker with Social Security fraud (Count One), theft of United States property (Count Two), and federal income tax evasion (Counts Three through Seven), for his alleged role in the receipt of Social Security disability benefits while a paid consultant for Lu, Inc. He entered a plea of guilty to the Social Security fraud charge and a federal income tax evasion charge pursuant to a written plea agreement with the Government on March 26, 2007, which promised cooperation with the Government in its continuing investigation of others and in providing truthful testimony in Court if requested by the Government. Terry testified that the Plea Agreement implicated the three Defendants in this case as being involved in the Social Security and tax fraud charges. Whitaker's employment as a consultant with Lu, Inc. was terminated by Lu, Inc. in early April 2007.

---

[4]Both SAUSA Garvey and SAUSA Partee are lawyers in the Tennessee Attorney General's Office.

Whitaker was interviewed by Internal Revenue Service agents on April 6, 2007. During that interview, Whitaker stated that both Defendant Novice Cole and Defendant Betty Cole knew that he was submitting fictitious invoices for payment. Little mention is made of Defendant White during that interview.

Sometime in the spring of 2007, most likely in April 2007 after Whitaker left Lu, Inc., Agent Craig called William Tucker, Whitaker's son-in-law and an employee of Lu, Inc., and asked for a meeting. During an interview at a local Hardee's restaurant, Agent Craig asked about Whitaker's health and Tucker advised him Whitaker was not doing well and would "probably not make it."

The four-count Indictment in the present case was returned on April 25, 2007. As indicated at the outset, it charged the Defendants with conspiracy to defraud the United States under 18 U.S.C. § 371, aiding and abetting Social Security fraud in violation of 42 U.S.C. § 408(a)(4), and two counts of concealing material facts within the jurisdiction of the Social Security Administration in violation of 18 U.S.C. § 1001(a)(1).

On May 1, 2007, Hardin wrote AUSA Phillips stating that he had "learned that Mr. Whitaker is not doing well" and that therefore he needed "to take his deposition as quickly as possible." (Docket Entry No. 111, Ex. N). On May 7, 2007, counsel for Whitaker, Terry, sent a letter to AUSA Phillips and Hardin in which Terry stated that they had asked to depose his client but that Terry had been informed Whitaker's "medical condition is grim," and a deposition could not be taken at that time. (Docket Entry No. 85, Ex. 3). Attached to the correspondence was a letter from Dr. William H. Liggett ("Dr. Liggett"), Whitaker's treating oncologist, who stated that Whitaker "has recently been diagnosed as terminal and placed in hospice care." (Id.). Whitaker died from metastatic lung cancer on May 15, 2007.

7

At the evidentiary hearing held on January 11, 2008, Stephanie Gore, Terry's law firm partner, testified that Terry was Whitaker's court-appointed counsel in his criminal case and that she too worked on the case. She stated Whitaker had an automobile accident in April 2007, the same day he was fired by Lu, Inc. Afterwards, when he came to their law office to discuss the lawsuit he was ambulatory and conversive, but he was sore. During Whitaker's treatment for injuries suffered in the accident, his doctor discovered that his previous cancer had returned.

During Whitaker's criminal proceedings, Terry filed a motion to continue the trial scheduled for November 14, 2006, because Whitaker had various medical appointments, was taking medication, could not sit for an extended period because of pain, and it was difficult to find adequate time to prepare for trial. Nevertheless, Whitaker was lucid during interviews with his counsel and the Government, even as late as an interview with the Government and a meeting with a probation officer on April 10, 2007. Gore also opined that both she and Terry did not think it would have been in Whitaker's best interest to be deposed while charges were pending until after any guilty plea was finalized.[5]

In Terry's testimony on February 7, 2008, he confirmed much of what Gore had said. Terry testified that conversations with Whitaker took longer than would normally be expected because Whitaker was not healthy, he had trouble sitting down for long periods of time, and he was an incessant smoker who needed to have a cigarette every ten minutes or so.[6] Terry believed that the first time AUSA Phillips suggested a deposition of his client occurred on the day of Whitaker's guilty plea

---

[5] Gore also testified that Whitaker was very fond of Defendant Novice Cole and, in fact, Novice Cole was a pallbearer at Whitaker's funeral.

[6] Like Gore, Terry stated that Whitaker "had a very positive relationship" with Novice Cole.

Case 3:07-cr-00093   Document 213   Filed 03/19/08   Page 8 of 17 PageID #: 2030

colloquy on March 26, 2007. Almost immediately thereafter, Terry went on a boating trip and was out of town for several weeks.

Terry further opined he would not have allowed Whitaker's deposition prior to Whitaker pleading guilty. When specifically asked whether he would have allowed Whitaker to plead guilty if he thought Whitaker were dying, Terry testified, "No. I didn't know Mr. Whitaker was going to die." (Tr. 2/10/08 at 27). In his testimony, Terry emphatically reiterated that he "didn't anticipate Mr. Whitaker's death." He stated that at the guilty plea hearing he thought "we were going to a sentencing hearing," that he "didn't anticipate an immediate death," and that he knew Whitaker had gotten sick but was surprised when he died. (Id. at 32, 99-100).

Defendant Novice Cole Jr. testified at the hearing on January 11, 2008. During his testimony, Novice Cole Jr. said that Whitaker told him he did not want to die in jail and that he would say anything he could to make sure he did not die in jail. Novice Cole Jr. also testified that Whitaker told him several times that he (Novice Cole Jr.) had nothing to do with Whitaker's defrauding of the Social Security Administration, nor did Defendant Betty Lou Cole.

Defendant White, Lu Inc.'s controller and Chief Financial Officer, testified at the hearing on February 29, 2008. She and Whitaker apparently did not have a warm or close relationship, although Defendant White testified that they generally had a "reasonably cordial relationship."[7] Defendant White alleges that Whitaker was reprimanded by Lu, Inc. in 2002, after he allegedly followed her into a storage room, shut the door, turned out the light, and said "I have been waiting to get you like this for awhile." She also alleges that in August of 2006, Whitaker told her he was an expert in explosives

---

[7]According to an Affidavit from Wyckoff, Terry told Wykcoff that Whitaker "deeply disliked" and harbored "anger and hatred of" Defendant White. (Wyckoff Aff. ¶¶ 17, 19(c)).

9

and that he could blow up her car using common items taken from under a kitchen sink and nobody would be any the wiser. Shortly thereafter, Defendant White claims that she frequently found flat tires on her car as she was leaving work. Despite these events, Defendant White stated that after he was indicted, Whitaker came to her office on several occasions to talk about his problems and told her she had done nothing wrong and that she was only doing her job in processing checks. She further testified, however, that Whitaker later told her about why he created the bogus H & L company to receive his consulting salary, that he thought she would be indicted, and she should consider cooperating with law enforcement officers.

With regard to Whitaker's health, Defendant White testified that he had difficulties in late 2005 because he was undergoing chemotherapy and radiation for cancer. She also stated, however, that Whitaker seemed to get around better in 2006. She noticed some decline in December 2006, but things really took a spiral downward sometime around April 2007.

The Prosecution Memoranda in Whitaker's case and in this case, which were filed under seal by the Government at the request of Defendant Novice Cole, Jr., also shed light on the issue of pre-indictment delay. Given the confidential nature of these documents, the Court will not go into detail about the Government's theories, evaluation of the evidence, and recommendations. However, it suffices to say that nowhere in either Prosecution Memorandum is there any suggestion the Government at any point was stalling so that Whitaker would be unavailable at the trial involving the present Defendants. Further, while the Prosecution Memorandum in this case indicates that Whitaker had been treated for cancer and is "a sick man," there is nothing in the document which would suggest that the Government thought Whitaker's death was imminent. Quite the contrary, the Prosecution Memorandum in this case indicates that Whitaker had apparently just beaten throat cancer after

10

receiving chemotherapy and may appear frail at trial. That Memorandum, however, makes clear that the Government expected to utilize Whitaker's testimony against the Defendants at trial. In the Prosecution Memorandum in Whitaker's case, the Government twice states its belief that Whitaker "has beaten throat cancer." A fair reading of both Prosecution Memorandums leads this Court to conclude that the Government fully desired and expected that it would be able to call Whitaker as a witness at trial.

## II. APPLICATION OF LAW

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. However, the Sixth Amendment does not apply to pre-arrest delay, and recourse for pre-indictment delay must be had under the due process clause of the Fifth Amendment. United States v. Marion, 404 U.S. 307, 324 (1972).

In this case, Defendants first recognize that the leading decision in the Sixth Circuit regarding pre-indictment delay under the due process clause of the Fifth Amendment is United States v. Rogers, 118 F.3d 466 (6th Cir. 1998) which indicates that dismissal of an indictment is only appropriate where "pre-indictment delay caused substantial prejudice to [defendant's] right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." Id. at 474-75. However, Defendants maintain that the Sixth Circuit's articulation of the prosecutor's intent is unduly restrictive in light of United States v. Lovasco, 431 U.S. 783 (1977) wherein the Supreme Court stated in a footnote "[a] due process violation might also be made out upon a showing of prosecutorial delay incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense." Id. at 795 n. 17. The Court rejects Defendants' argument in light of the Sixth Circuit's recent observation that it

11

"'has consistently read Lovasco to hold that dismissal for pre-indictment delay is warranted only when the defendant shows [1] substantial prejudice to his right to a fair trial *and* [2] that the delay was an intentional device to gain a tactical advantage." Wolfe v. Block, 2007 WL 3227551 at *5 (6th Cir. 2007)(quoting, United States v. Brown, 959 F.2d 63, 66 (6th Cir. 1992)(italics in original); see also, United States v. Brown, 498 F.3d 523, 528 (6th Cir. 2007)("We have interpreted Marion and Lovasco to hold that both conditions (improper reasons for delay and prejudice) are necessary for a due-process violation") The Court therefore turns to the two-prong test utilized in the Sixth Circuit

## A. Substantial Prejudice

"To prove unconstitutional pre-indictment delay, the defendant must first prove 'substantial prejudice to his right to a fair trial.'" Rogers, 118 F.3d at 475 (citation omitted). Generally, the statute of limitations for a given crime is "the primary guarantee against bringing overly stale criminal charges." Marion, 404 U.S. at 322. Nevertheless, "the statute of limitations does not fully define [a person's] rights with respect to the events occurring prior to indictment," id., because the due process clause of the Fifth Amendment also plays a "limited role" in protecting against excessive pre-indictment delay. Brown, 959 F.2d at 65.

In this case, the applicable statute of limitations is five years. 18 U.S.C. § 3282. The Indictment alleges criminal activity which lasted at least until November 2005. Therefore the return of the Indictment on April 25, 2007 was within limitations period.

Nevertheless, the Defendants claim that the delay of approximately nineteen months between the time the Government first became aware of Whitaker's alleged unlawful receipt of disability benefits and the return of the Indictment against the Defendants in this case was prejudicial. The Sixth Circuit has held longer periods of delay not presumptively prejudicial. See, United States v. King, 22

12

Fed. Appx. 567, 568 (6th Cir. 2001)(delay of 26½ months); Brown, 959 F.2d at 67 (delay of 33 months); United States v. Declue, 899 F.2d 1465, 1468 (6th Cir. 1990)(delay of three years). Where, as here, a "Defendant has not established a legal presumption of prejudice, he must show actual prejudice." United States v. Cooper, 2000 WL 1562791 at *2 (6th Cir. 2000).

Defendants assert actual prejudice by the delay in the return of the Indictment because Whitaker has died. They claim that his testimony would have been beneficial to them and perhaps exonerated them of participation in the scheme which allowed Whitaker to receive disability benefits while a consultant for Lu, Inc.

"Several circuits have held that the death of a potentially material witness during an undue pre-indictment delay may prove prejudice, but that is not alone determinative." Rogers, 118 F.3d at 475 (collecting cases). "The death of a potential witness during the pre-indictment period may demonstrate the requisite prejudice if the defendant can demonstrate that exculpatory evidence was lost and could not be obtained through other means." Id. "However, even where a defendant specifies what a deceased witness's testimony would have been, actual prejudice is difficult to prove." Id.

In this case, both Defendants Novice Cole and White testified that Whitaker told them they were not to blame for his criminal activity. Terry testified that Whitaker was fond of Defendant Novice Cole, while Wyckoff indicated in his affidavit (based on comments made by Terry) that Whitaker "could not stand" Defendant White. Even accepting all of this as true, the Court cannot find that Defendants have shown actual prejudice by the death of Whitaker because their arguments presuppose that Whitaker would have actually testified in their favor and attempted to absolve them of liability. It must be recalled that Whitaker confessed his guilt to the Government, agreed to cooperate, entered into a written Plea Agreement, and repeatedly made statements to the Government

13

implicating the Defendants in the charged crimes. Moreover, it is apparent to the Court that the Government, as evidenced by the Prosecution Memoranda, fully expected to utilize Whitaker at the trial in this case and hence it, too, was prejudiced by Whitaker's death.

Additionally, Defendants assert prejudice because they were not given the opportunity to depose Whitaker prior to his death and thereby preserve his testimony. However, it is clear from Whitaker's attorneys, Terry and Gore, that Defendants would not have been allowed to take Whitaker's deposition before his Plea Agreement and guilty plea, and when they were contacted about taking Whitaker's deposition sometime after his plea, counsel contacted Whitaker's family and was told Whitaker was in hospice care and his oncologist would not allow a deposition to be taken because he was too ill.

"[T]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative." Rogers, 118 F.3d at 477, n. 10. In this case, Defendants' claim of actual prejudice due to Whitaker's death is speculative.

## B. Reason for the Delay

If a defendant shows actual substantial prejudice, he must then show "that the delay was an intentional device by the government to gain a tactical advantage" in order to be entitled to dismissal for pre-indictment delay. Brown, 959 F.2d at 66. Here, Defendants claim that the Government anticipated Whitaker's death and intentionally delayed or postponed the proceedings as a tactical advantage. The record simply does not support that claim.

Much of the delay was due to the underlying investigation in this case. While the Government had learned in early 2005 about potential fraud relating to the installation of guardrails by Lu, Inc. and conducted a search of Lu, Inc.'s premises on April 20, 2005, it did not learn of any potential Social

14

Security disability fraud until a former employee of Lu, Inc. told investigators about the alleged scheme on October 12, 2005. Shortly thereafter, the Government began investigating this allegation and first interviewed Whitaker on December 1, 2005 about his receipt of Social Security disability benefits while an employee of Lu, Inc., among other matters. Later, the investigation expanded to include allegations of tax violations by Whitaker due to his receipt of disability benefits simultaneously with payments for work as a consultant. The Government then consulted with the Tax Division of the Department of Justice about its interest in a tax evasion case. Meanwhile, the Government sought and received records from financial institutions, as well as the Social Security Administration, the last of which was not received until April of 2007. When the prosecutors involved in this case believed they had enough evidence to proceed, the case had to be reviewed by supervisory personnel, which led to protracted discussions about the appropriate charges to be brought and further revisions of the charges by the prosecutors.

"It is well-established that a delay resulting from investigative efforts 'does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time.'" Rogers, 118 F.3d at 476 (quoting, United States v. Atisha, 804 F.2d 920, 928 (6th Cir. 1986)). This is because "[i]nvestigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused," and, as such, a prosecutor may "refuse[] to seek indictment until he is completely satisfied he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." Lovasco, 431 U.S. at 795. "Otherwise prosecutors would be forced to file premature indictments and in some instances to file indictments that would never have been filed at all." Wolfe, 2007 WL 3117551 at *5.

The Court does not see any evidence in this case which suggests that the Government's

15

investigation was unduly protracted or done in an effort to gain a tactical advantage. Less than ten months after first learning of Whitaker's receipt of consultant fees from Lu, Inc. while Whitaker was on disability, Whitaker was indicted on August 30, 2006. Approximately 19 months after the Government first learned about the allegedly improper receipt of Social Security disability benefits by Whitaker, the Defendants in this case were indicted on April 25, 2007. Given the extent of the investigation, as well as parallel investigations involving Lu, Inc. and its employees, the Court cannot find that the Government was attempting to prolong things for a tactical advantage.

Nor can the Court find that the Government was attempting to extend the case so that Whitaker would die and not be available as a witnesses for the Defendants. To begin with, the record firmly establishes that the Government fully intended to utilize Whitaker as its primary witness in this case. Further, Defendants' suggestion that the Government knew Whitaker would likely die before trial is simply not supported by the evidence which has been presented to the Court. While Whitaker was diagnosed with cancer in August 2005 and underwent radiation and chemotherapy treatments which lasted until December 2005, there is no evidence in the record which suggests that Whitaker's death at the time appeared imminent, or that the Government believed Whitaker was going to die at some point in the near future. The Prosecution Memorandums show that the Government intended to rely on Whitaker as a witness at trial and observed that Whitaker had "beaten throat cancer." Even Defendant Sharon White admitted that while Whitaker was sick while undergoing cancer treatment in late 2005, his condition was much improved throughout 2006. In fact, Whitaker remained a consultant at Lu, Inc. until April 2007 and he went to work there somewhat regularly, albeit not on a daily basis. Terry, Whitaker's own counsel, did not expect Whitaker to die and was surprised when he heard of Whitaker's death. The most the record shows is that Whitaker's health declined rapidly

16

beginning sometime around April 2007, and in early May 2007 Dr. Liggett wrote a letter stating Whitaker has "recently been diagnosed as terminal[.]" When counsel for Defendant Novice Cole wrote Phillips and stated and he had heard Whitaker "was not doing well" and therefore wanted to take his deposition, Whitaker was too ill to be deposed.

Having reviewed the entire record, the Court sees nothing from which it could reach the conclusion that the Government anticipated Whitaker's death, or that it delayed this case in any way in order to gain some sort of tactical advantage. Accordingly, dismissal for pre-indictment delay is not warranted.

### III. CONCLUSION

On the basis of the foregoing, Defendant White's "Motion to Dismiss for Pre-Indictment Delay" (Docket Entry No. 94) and Defendant Novice Cole's "Motion to Dismiss for Preindictment Delay" (Docket Entry No. 111) will be denied.

An appropriate Order will be entered.

*[signature]*

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE